Good morning. Our first case this morning, Kyriakpoulos v. Maigetter. May it please the court, your honor, Larry Holmes for the appellant, Mr. Maigetter. I have asked to reserve three minutes for rebuttal time, your honors. Okay, that's done. And you can start by letting me know, if you know, whether by practicing for ten minutes how to say the plaintiff's name, I came out okay. Is it Kyriakpoulos? That's correct, your honor. Okay, thank you. I want to make sure I'm treating people respectfully here. I don't want to mispronounce the gentleman's name. But go ahead and tell us what you'd like us to know about this case. Your honor, thank you. As a first matter, I will be referring to Ms. Burrough throughout the conversation today as the deceased. That is not in any way disrespectful or insensitive. But for ease of understanding the very important issues in this case, I'm just going to refer throughout as the deceased. Second, I want your honors to appreciate the only issue before your honors today is her honors ruling below that involves whether the testamentary exception applies only to communications made by the deceased or additionally to communications made by others which discuss statements made by the deceased and are probative of the deceased's intent. I highlighted the word additionally because what's before us is an expansion of an exception to the attorney-client privilege. Why don't you start by telling us if you think Pennsylvania's got the exception to begin with. I think Pennsylvania has a testamentary exception and I'm not here to say there shouldn't be one. I'm here to say that this court, I'm sorry, I'm here to say that this case is not an appropriate application of the testamentary exception. And if there is a testamentary exception in Pennsylvania, well, let me ask it this way. My understanding is that at some point there was a proposition made for an amendment to the Pennsylvania Rules of Evidence to codify the exception and that that never happened, that it was not enacted. Am I right about that? Your honor, I admit that I do not know the answer to that question. I am proceeding here not to challenge whether or not a testamentary exception exists, but to say that even if a testamentary exception exists, this does not satisfy the elements of the testamentary exception. In your view, we could rule on this case by assuming it exists and focusing strictly on the scope of it and saying what Judge Brody did here was to take the exception, whatever it might be, and push it past its limits. Is that it? Or I could characterize it as creating a completely new exception, which is an exception that doesn't involve statements by the deceased, but statements by a third party. But to come back to your original point, yes, we can limit ourselves here to an analysis of whether the testamentary exception, as described and defined by Her Honor below, was appropriate applied in this case. I understand that Mr. Kiriakopoulos' position is that your side waived the privilege with respect to Mr. Mike Getter's communications with Attorney Eastburn. You've taken that up in your briefing, but why don't you just tell us why there's not a sword and shield problem here, that you lifted the veil a little bit, but you're refusing, and having done that, you don't get to say, I'm not giving you more. Our side is not invoking Mr. Mike Getter's right to privilege in the communications that have been provided. That was the deceased's privileged communications. The moment of her death is also the line of demarcation of our producing privileged documents, and not producing privileged documents after that, because the privileged communications before the deceased's death are the communications of the deceased. We are enforcing today the privileged communications of the appellant, and solely the privileged communications of the appellant. So if any privilege associated with the deceased is waived, it can all be waived, but there are no communications after a deceased, after the decedent's death. So I understand the argument on the other side to be, but these are communications about, purporting to say what she said. They're not just him talking, him being Mr. Mike Getter. They are Mr. Mike Getter expressing the words and sentiments of the deceased. With all due respect, Your Honor, it's Mr. Mike Getter expressing his own recollections, his own feelings, his own characterization of the deceased's intent, of the deceased's statements. It is not statements of the decedent. It is his impressions and his memory and his feelings about those. The justification for the exception is that we're trying to give effect to the deceased's wishes, right? And so the district court did an in-camera review, and based on her review, decided that these particular emails would do that. Why isn't that enough justification? Her Honor also indicated that her Honor was expanding to the statements of a third party, so that this represented an expansion of an exception to the privilege. In that case, there has to be an examination by Your Honors and by her Honor as to a balancing of whether the right of the appellant to privileged communications is outweighed by the benefit that would come from breaching that privilege. There is no benefit here to breaching this privilege because there is no dispute about what the deceased's intent was. Her intent was always to give the property to her son. That's correct. There is no dispute about that. There is not any dispute about the deceased's intent, and that is one of the reasons. That's why the testamentary exception was created, was because if there was a fight about a person's intent in a will, the person best equipped to describe and to testify about that person's intent to the will is the scrivener of the will, the attorney who did the will and had the communications with the person. And a good, trusted estate's lawyer who's talking to their client says to them at some point, you understand that if you were to die and this will had become an issue, I would be able to testify. And a person going to an attorney to talk about doing their will or planning trust in the estate can understand that. The expansion of this to now say that third parties' communications about their own recollections and their own impressions about what a third person said to them will require their attorney now to say to them, before you say these things to me, you have to analyze everything you're going to say to me about what some third party said. And we have to evaluate whether or not that's privileged. So I'm at the risk of lecturing, Your Honors. I would like to read aloud from the Pennsylvania Supreme Court. The privilege is grounded in a policy entirely extrinsic to protection of the fact-finding process. Its purpose is to foster a confidence between client and advocate that will lead to a trusting and open attorney-client dialogue. Yeah, we understand the importance and the rationale for the attorney-client privilege. We're wrestling with what a thoughtful district judge with a lot of experience on the bench thought about this testamentary exception and whether it ought to apply here. And I take it that the seed of your argument is maybe what Judge Hardman just asked about, that this exception has nothing to do with this case because everybody knows what her intent was. That is exactly right. This exception, it is not necessary to expand this exception. You must expand the exception in order to breach the confidence, to breach the attorney-client relationship of my client and his lawyer to get to these emails, emails that, Your Honors, have been put into the record under seal. The, I'm sorry. So let's say you weren't, you're essentially stipulating what her intent was. What if you were contesting that? It is still the intent. I appreciate that question, Your Honor. If I cut you off, I'm sorry. Yeah, go ahead. I guess you see where I'm going. I do see where you're going, but this is not the intent of how to collect under a will. And that's the second half, very important half of the testamentary exception, although I don't even, I don't need to go there, but Your Honor has asked, so I'm going there. This is not a will dispute. The will makes clear that first and foremost, everything of the deceased goes to her husband, goes to the appellant. That's the will. The appellee did not contest the will, did not seek to make a claim under the will. The appellee has sued my client for breach of contract. There is not a breach of contract exception to the attorney-client privilege. And no matter what the deceased's intent is, it is the intent of both parties and the actions of both parties that create whatever contract does or does not exist for purposes of contracting to give this property to Mr., to the appellee. And so that is another crucial distinction in this case. It's not about a will contest. It's about a breach of contract. I am not here to tell you that Her Honor below made some egregious mistake. I'm here, though, to tell you that the unintended consequences of this ruling are grievous and are substantial. And I will remind Your Honors that Her Honor indicated that she was expanding this, certified it for appeal now, and not expected that this would be overturned, but certainly understood that we would be fighting this vigorously and that this was an expansion of a privilege. She expressly said there's a substantial basis for disagreement about controlling questions. And I would say, Your Honor, I would also say Her Honor also ruled on all of the documents. So the argument about waiver, the argument about joint privilege, those were determined by Her Honor below and were not challenged by the appellee. And therefore, in the certification order, Her Honor didn't justify her explicit finding that... Once the order is certified, though, isn't the whole issue before us, the whole shebang? I mean, this isn't... She doesn't certify issues to us. She certifies the decision and order to us. What Her Honor certified to you was the release of eight documents on the testamentary privilege. And before Your Honors is whether that was right. So the complex of issues associated with that, that's all in front of us, right? Everything we would need to look at to understand and rule on that order is properly before us, is it not? I am not here to tell Your Honors what you can or cannot review. I do not believe that the court was given the opportunity in the certification order to explain her reasoning for no finding of waiver and no finding of joint privilege. And that would have been her opportunity to do so, Her Honor's opportunity to do so, had that issue been raised by the appellee. Okay. We'll have you back on rebuttal. Thanks very much. You may please the court. I'm Glenn Reidenauer. I represent the appellee and the son of the decedent, Alex Kurikopoulos. Having had an opportunity to sort of survey the questions asked and the answers that were given, if I could have just 60 seconds, I'd like to just sort of make sure we take a step back to see the forest before we start dissecting the trees. This case involved a couple that hired a single lawyer to do a joint estate plan. So from the get-go, they knew that communications between them with this single attorney were not going to be privileged between them. And that they came up with an estate plan, a joint estate plan, with the purpose of protecting her son, who was from a prior marriage, and his kids from a prior marriage. We're familiar with all that. That was the agreement. We're familiar with all that. And in fact, they don't contest what you just said. I don't think anything you just said is something that's at issue here. They don't contest that there was a joint representation. They don't contest that there was a joint estate plan put in place. They don't contest that the deceased wanted this co-op to go to her son. They fully admit that, and there's plenty of evidence of that. None of that's on the table. The only question that we've got in front of us is, was Judge Brody right in saying that a testamentary exception applies when there's no will contest, when there's no question about the intent behind the will, or the intent of one of the devisees, of the devisee. And there's no, and there's actually no question about the character or nature of the authority that was behind what she did. She herself, the judge said, and I'll quote, So she herself says, these are not the communications of the deceased. These are the communications of Mr. Miegetter. So those things, none of those things seem to be in dispute. Query under that set of circumstances, how does your client win? Understood. The reason that the lower court was correct in taking those points in turn is, number one, the question of, well, maybe this isn't a will contest, so the testamentary exception does not apply. I think in our brief, and now I'll take exception with that conclusion, I think the sort of foundational case, which is the Supreme Court case of Glover, the court specifically says that the exception applies to wills, trust, and similar documentation. So right there, right there we're beyond, well, I would say that a will, a contract to will falls in the category of other documents because they are testamentary documents. They are documents that are meant to control when a person passes. This is the testamentary exception, not the will creation exception. Well, wait a second. Who makes the testament? What's the definition of a testator? The testator is the person that creates the trust documents or the will documents or whatever the documents are being created is the testator. Not the contract. Well, again, the contract is part of the larger estate plan. Right, but by definition, the testator is a person who's creating a will, right? True. So to answer your question without trying to do a dodge, let me say this is also a will contest because the issue is, It's not a will contest. It is, Your Honor. In which Court of Common Pleas is the will currently being contested? I submit it's a contest over what does the will mean? In which Court of Common Pleas is the will contest occurring right now? There's no appeal from probate to say the will of the wife is invalid. Am I mistaken in understanding that will contests are matters of State law that occur in Pennsylvania in the Courts of Common Pleas? That's a fact. Okay. So which Court of Common Pleas is this will contest occurring? If the answer is none, then I guess to Judge Jordan's point, there's no will contest. Again, the contest, there is no contest over the validity of the wife's will. There's no contest of the will at all. If you had a contest of the will, you'd be in court on the will. There's a contest over what's the meaning of Article 5, Paragraph C. What did the will intend? What did they intend? That's what's in dispute. Do we know what she intended? Didn't they have an ongoing dispute about how to deal with these thorny issues about the fact that they had children from other marriages? And it was clear, the record is rife with evidence that she wanted the co-op in Washington, D.C. to go to your client, right? Yes, Your Honor. And it's equally clear, I think, that Mr. Maygetter wasn't quite on board with that. Because if he had been on board with that, there would have been some explicit provision made that when something happens, then the co-op goes to your client. I think the dispute is that he was on board, and this is an after the agreement attempt to sort of buyer's remorse or to breach the agreement. I think that's what's in dispute. And the question is, did the will create a contract? Did they intend the will to create a contract? And the lawyer can testify what their intentions were. That's why it's under the testamentary exception. No matter what they subjectively wanted, isn't their agreement memorialized in the will, and it says that it goes to Maygetter? That's my understanding, is that both wills are mutual wills that create this contract, and their argument is that it does not. So I'm entitled to get evidence from their joint representation as to their intentions. On the issue of intent, let me just say this. I thought it wasn't in dispute. Well, what's in dispute is whether he intended. That's the dispute. I guess my point would be... We don't have to have a testamentary exception to that. You can ask him. He's told you what he wants. Assume for the sake of discussion that at some point in time, he did intend to give this to your client. At another point in time, he decided not to. You've got a contract dispute, but that's not a will dispute. I mean, you've cited Glover. Glover's pretty clear. Glover says, Not in a contract case. In a suit between devisees under a will. How do you get past that? Again, I can't say anything more than what I've already said, which is it's my contention that the exception is broader than just a will, and that this is a contest over the meaning of a provision in the will that the attorney drafted for both of them. This is a dispute over the meaning. Does that provision create a contract that's in the will? Take us to the question of whose privilege this is. Do you dispute that these are communications between Mr. Mygetter and his attorney? I do not, Your Honor. Okay. So there's not some assertion that these are... I mean, I take it you're agreeing with Judge Brody that what she did would constitute an expansion of the testamentary exception beyond what whatever law there is exists on the topic. Because she says, I've got no authority for this. I see no authority for this. I think that there's two, although it doesn't come up very often, doesn't mean they're not two well-established exceptions regarding joint representation and testamentary exception. I think both of them together are what's driving the conclusion of the judge in this case. And she even specifically points out in her own words, a joint estate plan for decedent and defendant. By definition, the decedent is dead. And we're talking about post-death communications. You've gotten everything that was said and done through the lifetime of your client's mother. They say she's gone. That's a tremendously sad thing for everybody involved in this case. But she's gone. And you're not even disputing that what we're talking about now are Mr. Mygetter's communications with his lawyer, not his communications with their lawyer, because she's dead. It's his communications with his lawyer. How does joint representation come into it at all at that point? I would have two responses to that, if I could. First, I take exception with counsel's repeated arguments in his reply brief that the lawyer was only representing the husband after the wife died. The representation of the wife continues after the date of death. So hence, the joint representation on the same subject matter, which was the joint estate plan. I think that's your best argument. But what's the support for that? I mean, clearly this was joint representation. All of the marital privileges attached to that when they were married, when they went to see the lawyer. But I'm not sure I understand why what was once a joint representation continues to be a joint representation after the death of one of the parties to it. Do you have any case law for that? I'm not sure I accept that. What do you have to support it, I guess? To be completely honest with you, it's sort of presupposed in most, well, not all of these cases. I thought it was sort of a point beyond the need for citation. The attorney's duty to the decedent. But that's OK. So the lawyer has a duty to the decedent. Absolutely. But once the decedent's no longer with us, Mr. Magad, that lawyer owes a duty to him as well. And I guess your argument is that it's almost as if he can't have an attorney-client relationship that's between the two of them. It's as if from the grave the decedent continues to be a part of that relationship. Is that the argument? The reason we're in this mess is because, of course, I've never seen the e-mails. But as soon as the husband questions the agreement and his obligations under it, she should have said, you'll have to consult with another attorney regarding your obligations under this joint estate plan. She didn't do that. So now they want to hold the privilege and penalize my client for that. Because he went forward with her, that is the husband and the same lawyer, that's the very reason why now these cannot be privileged. Because they revealed the agreement that existed. Mr. Renauer, assume that every one of those 12 documents that she said there's a testamentary exception to, said in it on every line, I know I agreed to this, but I'm not doing it now. I'm not doing it now. I know what she wanted, but I'm not. That's a counterfactual, but just assume for the sake of discussion that that were so. What difference does that make as to the case that your client needs to make or wants to make in the contract dispute? What evidence do you have? What difference would that make given that there's an acknowledgment of intent here? I'd answer that in two ways. First, I would say this. This case is not about just the wife's intentions. This case is about whether or not there was an agreement. An agreement which by definition, an agreement is the intentions of two people. And once those intentions are blended together into an agreement. You're saying there was a contract, an agreement. So what you really have to say is there was a contract with the wife because it wasn't with your client, right? Your argument has to be your client is the third party beneficiary of a contract between Mr. Meigetter and his now deceased wife, correct? Correct, Your Honor. Absolutely. Even if you could demonstrate all that, that he's the third party beneficiary, is your argument that there's somehow an enforceable contract with the wife after her death, that he as a third party beneficiary, he can enforce an agreement which was the foundation of the will? That's Pennsylvania law, yes. He's a third party beneficiary of the contract. Now once their intentions are blended together in that agreement, it's like ingredients in a recipe. You can't take them apart. So every comment by the husband after the date of death about the agreement is revealing both of their intentions at the exact same time. And there's no statute of frauds problem? Well, there's other writings involved in the case, so that's one of the issues below, but I don't believe it. It's been a long time since I was in law school, so I could have the law wrong on this, but is this contract for sale of land or not? Is the rules different because it's a co-op than if it were a single family house? It's a D.C. co-op, so it's shares of stock in a corporation that owns real estate. So that's one of the disputes about what exactly is. So this contract that you want to enforce did not need to be a written contract? That's in dispute. I mean, I would say no. That's a downstream dispute. It's a downstream dispute. I see my time is up, but the final comment I'd make is simply, what if the e-mails had been sent a week before she died? Would she not be entitled to the e-mails and the attorney to tell her what was communicated between them? I don't see what's changed a week after she dies. You got everything that occurred before she died. That is also not a dispute. You want his communications with his lawyer after she's dead. I want the communications with their lawyer after she's dead. And again, my hypothetical is, what if he had sent these same e-mails a week before she died? Would she not have been entitled to them? I think yes. After she dies, she or her successor, in this case her son, who's a third-party beneficiary, is entitled to see these intentions if they had to have an agreement. And they simply can't dodge that. Not only is this all a dodge in regards to trying to get around the testamentary exception, the joint representation, but it's all inherently unfair. I mean, the husband's the executor of the estate. If the husband was not the executor of the wife's estate, the executor could be demanding these e-mails. So he holds the privilege he claims for himself personally, which he waived, and he holds them for the wife as executor, which he's waived. Now he wants to assert the privilege. You've got to stop. I mean, it may seem rude, but it's a stylized conversation, and this is all being recorded. So if you're talking when we're trying to talk, it gets muddled. So your argument about waiver, which we haven't asked you about, is not something that you appeal. She ruled on waiver and said no waiver. You didn't cross-appeal, did you? I did not cross-appeal. Okay. Then are you in a position to challenge the waiver ruling? Well, I've reread her opinion. I don't see where she specifically says there was no waiver. She simply doesn't address the argument at all. All right. Well, we've got your argument. Thanks very much, Mr. Rubin. I appreciate it. We'll have you back on the rebuttal, Mr. Holmes. Thank you, Your Honor. Your Honor, just a couple of quick things. Her Honor's order. All other redacted and withheld documents identified on the privilege log provided to the court fall under the attorney-client privilege and are not subject to any exemption or waiver. It's a very clear ruling by Her Honor. Also, with regard to Her Honor, Her Honor has before her as the trial court this case, this dispute, this controversy. This controversy is about a contract to will, and everything the parties need to litigate this case is currently before the parties. They don't need what's in it. Answer Mr. Ridenour's assertion that his client is a third-party beneficiary. It's not just about the wife's intention, which you've admitted. It's about what your client promised his now-deceased wife. And evidence of what he promised his now-deceased wife is essential to their case that your client has breached a contract to which his client is a third-party beneficiary. It's essential evidence, and it is not right for you to be able to hide it. Except for the fact that basically I'm allowed to disclose anything to my attorney in a confidential setting, and those conversations, those disclosures, those factual analyses, those hopes, desires, dreams, thoughts, recollections, those are all protected communications. As Your Honor indicated... Go to the joint representation piece as you're answering that. It's their attorney, not his attorney. After the decedent's death, he went to the attorney with the expectation that he would get advice for what to do next after the decedent passed away. If he did that knowing that she was their attorney, not his attorney, does that make a difference? No. Because? Because he was having communications to try to figure out his legal obligations as what to do next. If there was a contract to will, it was an enforceable contract that existed at or before the moment of the decedent's death. But after that, what is in front of my client is his obligations. What are my obligations now? And he sought advice on what his obligations were. And there is no reason why he cannot seek that advice and get that advice as to what do I do next. And it is about his expectation of whether or not this is a privileged communication. I would say to Your Honors that before her honor is this case and everything they need is already in the record. The admissions that we understand the intent. No dispute about what the intent was to contract to this case. Any evidence about contracting has to be before the death of the decedent because that is only when the contract could have been formed. But before Your Honors is an expansion of an exception to the attorney-client privilege. And that will have ramifications far beyond this case and are not necessary. Thank you. Thanks Mr. Holmes. We got the matter under advisement. We appreciate counsel's argument in the briefing.